IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| STEPHANIE HAYASHI and JEROLD LAZERSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: |
| LUX AMBER CORPORATION, EARL THOMAS LAYTON, and WALTON ASHWANDER, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs Stephanie Hayashi and Jerold Lazerson state as follows for their Complaint against Defendants Lux Amber and E. Thomas Layton (collectively, the "Defendants"):

## PARTIES

1. Stephanie Hayashi is an adult citizen of Hawaii.

2. Jerold Lazerson is an adult citizen of California.

3. Lux Amber is a Nevada Corporation with its principal place of business in Dothan, Alabama.

4. Earl Thoms Layton is the Chairman and CEO of Lux Amber Corp. and is a resident of Frisco, Texas.

5. Walton Ashwander is the President of Lux Amber Corp. and is a resident of Dothan, Alabama.

1

**JURISDICTION AND VENUE**

6. In this matter, diversity jurisdiction is conferred by 28 U.S.C. § 1332. Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, one or more of the Defendants either resides or maintains executive offices in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

**FACTS**

**Lux Amber Background**

8. Lux Amber Corporation incorporated in Nevada on or around January 19, 2018. The company originally developed as a jewelry design service, but eventually morphed into a specialty chemicals company that produces chemical products used in a diverse range of applications.

9. Lux Amber Corp. has three wholly owned subsidiaries: Worldwide Specialty Chemicals, Inc. ("WSCI"), Industrial Chem Solutions, Inc. ("ICS"), and Safeway Pest Elimination, LLC ("SPE"). On or around March 26, 2020 a merger converted Lux Amber from an early-stage development company into a larger entity with a stock symbol of LXAM.

10. As part of the merger agreement, the pre-merger officers and directors resigned and Mr. Earl Thomas Layton was elected to the Lux Amber Corp. Board of Directors and named Chief Executive Officer.

11. The Form 8k filed on or around July 1, 2020 provided that the company had "incurred net losses since inception" and that there was substantial doubt that it could continue as an ongoing business unless it altered its business model and/or obtained additional capital.

**Stephanie Hayashi's Investment in Lux Amber**

12. Stephanie Hayashi met Mr. Layton around March of 2017. From her first contact with Layton, Layton told Hayashi that Lux Amber was doing well, growing at a rapid pace, and needed money to build new chemical plants along the lower east coast and to purchase additional raw materials. Lux Amber representatives also told Hayashi that some of the Lux Amber board members had affiliations with the United States government and that Lux Amber products would be sold to the government for increased revenue. Based on these representations, Mrs. Hayashi flew to Texas to visit one of the Lux Amber offices.

13. Layton and a few Lux Amber board members also flew to visit Hawaii for a dinner with Hayashi and other investors. At this dinner, more positive representations about Lux Amber's growth were made.

14. Around the 2022-2023 time period, Mr. Layton sent out a letter to investors that detailed a Certificate of Deposit opportunity. He presented this opportunity as a six-month or a thirteen-month CD that would pay six-percent interest. Layton promised that the new investors in the CD deal would be awarded company shares for being the first ones to invest. In fact, this investment was not a CD at all, it was simply security for a line of credit taken out by Lux Amber and Layton to continue operations and possibly to pay Lux Amber executive salaries. When Mrs. Hayashi requested the return of her principal, the bank told her that it could not be returned and that she needed to sign a Loan Renewal Agreement. Layton changes his position on this issue a number of times. First he stated that Hayashi would get back her CD investment.

Then Layton stated that he would find someone to take Hayashi's place in the CD investment. Finally, he stated that Hayashi should forgo the CD investment principle in exchange for shares in Industrial Chemical Solutions shares. All of these were misrepresentations that Hayashi relied upon to her detriment.

15. Throughout Hayashi's relationship with Lux Amber and Layton, she consistently asked Layton for financials. She specifically requested operating costs, income, expenses, etc. At no point did Lux Amber, Layton, or Ashwander provide those items to her.

16. In addition to the "CD" investment of $100,000.00, Hayashi has invested over $501,100.00 of additional funds in Lux Amber based on the misrepresentations of Layton, Ashwander and other Lux Amber representatives.

**Jerold Lazerson's Investment in Lux Amber**

17. Like Mrs. Hayashi, Jerold Lazerson fell victim to Mr. Layton's misrepresentations. Instead of six-percent, Lux Amber representatives promised Lazerson a five-percent rate of return on his CD. He too, invested $100,000.00 into what he thought was a thirteen-month CD. At the end of that term, Lazerson also learned that his principal would not be returned because it secured a line of credit taken out by Layton and Lux Amber.

18. Upon learning of the true nature of the CD investment, Lazerson contacted Layton and demanded the return of his funds. Rather than paying him, Layton asked Lazerson to transfer the funds to Industrial Chem Solutions and threatened that the CD funds would be lost if he did not do so.

19. In addition to the $100,000.00 CD that was used as collateral, Lazerson also invested in Lux Amber stock based on the material misrepresentations of Layton, Ashwander,

and other Lux Amber representatives. To date, Lazerson has invested over $159,920.00 into this company and has been injured in an amount to be proven at trial.

## COUNT I

## BREACH OF CONTRACT

20. Plaintiffs incorporate, as if fully stated herein, all the preceding paragraphs in this Complaint.

21. Defendants' refusal and failure to satisfy the material terms promised to Plaintiffs is a material breach of the contract agreed to by the parties.

22. Defendant Lux Amber and Layton entered into a valid and binding contract where Defendants agreed to pay Plaintiff's a guaranteed rate of return.

23. Plaintiffs performed all of their obligations under the contract.

24. Plaintiffs have suffered damages as a direct and proximate result of Defendants' breaches of these contracts.

## COUNT II

## VIOLATION OF RULE 10b5 OF THE SECURITIES EXCHANGE ACT OF 1934

25. Plaintiffs incorporate, as if fully stated herein, all the preceding paragraphs in this Complaint.

26. The Defendants' actions as set out above violate the United States Securities Act of 1934, including SEC Rule 10b5 promulgated pursuant to the Act.

27. Defendants made false and misleading statements to Plaintiffs set out above, in connection with the sale by Defendants to Plaintiffs of Lux Amber stock with the intent to deceive, manipulate or defraud, and Plaintiffs reasonably relied on the false and misleading statements and suffered damages as a result.

## COUNT III

## VIOLATION OF THE ALABAMA SECURITIES ACT

28. Plaintiffs incorporate, as if fully stated herein, all the preceding paragraphs in this Complaint.

29. Interests in Lux Amber stock that are the subject of this Complaint are "securities" as defined in Section 8-6-2 of the Alabama Securities Act.

30. Pursuant to Section 8-6-17 of the Alabama Securities Act:

   (a) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to:
   1. Employ any device, scheme, or artifice to defraud;
   2. Make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading; or
   3. Engage in any practice or course of business which operates or would operate as a fraud or deceit upon any person.
   (b) It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise,
   1. to employ any device, scheme, or artifice to defraud the other person,
   2. to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person;
   3. to engage in dishonest or unethical practices as the commission may define by rule.
   (c) In the solicitation of advisory clients, it is unlawful for any person to make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

31. Alabama Code § 8-6-19(c) provides that every person who directly or indirectly controls a person liable under subsections (a) or (b) of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving

6

rise to the liability, and every dealer or agent who materially aids in such conduct is also liable jointly and severally with and to the same extent as the person liable under subsection (a) or (b), unless he is able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

32.     Defendants made untrue statements of material fact to Plaintiffs set out above, in connection with the sale by Defendants to Plaintiffs of Lux Amber stock with the intent to deceive, manipulate or defraud, and Plaintiffs reasonably relied on the false and misleading statements and suffered damages as a result.

33.     Under the Alabama Securities Act, the person buying the security is entitled to recover the consideration paid for the security, with interest at six percent per year from the date of payment. Ala. Code Section 8-6-19(a)(2) (2003).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek judgments in their favor and against Defendants as follows:

A.  All actual and compensatory damages caused by Defendants' wrongdoing including loss of interest and reasonable costs;

B.  Well-managed damages;

C.  Costs;

D.  Statutory interest on plaintiffs investments based on Ala. Code Section 8-6-19(a)(2);

E.  Rescission;

F.  Disgorgement; and

7

G.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Richard Frankowski
Richard Frankowski (FRA045)
The Frankowski Firm
231 22nd Street South
Suite 203
Birmingham, AL 35233
T: 205-390-0399
F: 205-390-1001
Richard@frankowskifirm.com
*Counsel for Plaintiffs*

Date: December 17, 2025