IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE HAYASHI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LUX AMBER CORPORATION, *et al.*,<br><br>Defendants. | ) | CASE NO. 1:25-cv-00994-RAH |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Pending before the Court is Defendant Earl Thomas Layton's *Motion for Partial Dismissal of Claims Asserted in Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*. (Doc. 45.) Plaintiffs have responded in opposition, (doc. 47), and Layton has replied, (doc. 51). For the reasons that follow, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Construing the factual allegations in the Third Amended Complaint (TAC) as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows.

Plaintiffs Stephanie Hayashi and Jerold Lazerson invested in Lux Amber Corporation and its predecessor, Worldwide Specialty Chemicals, Inc. (WSC). Hayashi alleges that, between 2016 and 2020, she purchased private shares of WSC and then Lux Amber in reliance on representations by Layton, who was Chairman of the Board and the Chief Executive Officer, and others, and that in October 2018 she advanced $50,000 to Layton personally under a promissory note bearing interest

at 12% per annum, after Layton represented that WSC stock "is trading in a public market" even though, unbeknownst to Hayashi, there was no public trading market for WSC or Lux Amber stock. (Doc. 39 at ¶¶ 21, 26–28; Doc. 39-1.)[1]

In April 2023, based on representations by Layton, Hayashi agreed to fund a $100,000 thirteen-month certificate of deposit (CD) at ServisFirst Bank that paid a guaranteed 6% annual return, with Layton personally guaranteeing repayment. (*Id.* at ¶ 42.) Hayashi was not told that her $100,000 would also serve as collateral for a line of credit taken out by Lux Amber and Layton. (*Id.* at ¶¶ 43–44.) A year later, Layton acknowledged that "Lux Amber, Corp., does not have the funds to repay $100,000 to ServisFirst Bank." (*Id.* at ¶¶ 48, 51.) And according to Hayashi, her stock is now worthless and her CD money has not been returned. Hayashi alleges a net out-of-pocket loss of $650,470.06 due to the money invested in the WSC stock, the CD, and the promissory note, less a $630.44 interest payment that she received. (*Id.* at ¶ 4.)

Lazerson alleges that in January 2021 he learned of Lux Amber from a family member and thereafter dealt directly with Lux Amber and Layton. (Doc. 39 at ¶ 61.) He alleges that, "[a]t the time he was solicited to invest," he "was told, in substance" that a CD investment would receive a guaranteed 6% annual return, that Lux Amber would file the documents necessary to become publicly traded, that Lux Amber's revenue was increasing yearly, and that an SBA loan would be obtained to ensure that his CD investment money would be returned to him. (*Id.* at ¶ 63.) Lazerson then invested $100,000 into what he was told was a thirteen-month CD at ServisFirst Bank, "with Layton personally guaranteeing the investment," and an additional $135,928 in Lux Amber stock. (*Id.* at ¶¶ 64, 66.) As with Hayashi, he alleges that he

---

[1] WSC is Lux Amber's predecessor and is now one of its subsidiaries. (Doc. 39 at ¶ 8.) On March 26, 2020, a merger converted WSC from an early-stage development company into Lux Amber. (*Id.*)

was not told that his $100,000 would serve as collateral for a line of credit taken out by Lux Amber and Layton. (*Id.* at ¶ 64.) Lazerson alleges that he received an August 27, 2024, memorandum from Layton that disclosed for the first time that Lux Amber "has no income." (*Id.* at ¶¶ 68, 71.) Like with Hayashi, Lazerson claims his stock is worthless and his CD money has not been returned. He alleges a net out-of-pocket loss of $235,428, including the $100,000 CD investment and $135,928 for the stock purchase, less a $500 interest payment that he received. (*Id.* at ¶ 5.)

Hayashi and Lazerson then sued Lux Amber and Layton over their lost investments.[2] The TAC asserts ten causes of action, five by each Plaintiff. Hayashi asserts claims for breach of contract (Count One); violation of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and SEC Rule 10b-5 (Count Three); violation of Section 20(a) of the Exchange Act (Count Five); violation of the Alabama Securities Act (Count Seven); and fraudulent misrepresentation and omission (Count Nine). Lazerson asserts similar claims: breach of contract (Count Two); violation of Section 10(b) and Rule 10b-5 (Count Four); violation of Section 20(a) (Count Six); violation of the Alabama Securities Act (Count Eight); and fraudulent misrepresentation and omission (Count Ten).

Layton, who alone has moved to dismiss,[3] seeks dismissal of Counts One and Two to the extent they rest on the CD investments, and Counts Four, Six, Eight, and Ten in their entirety. He does not seek dismissal of Counts Three, Five, Seven, and Nine, or Count One to the extent it rests on the October 2018 personal note with Layton.

---

[2] Though Walton Ashwander is named in the case caption as a defendant, the TAC does not list him among the parties and asserts no claim against him. The Court previously dismissed Ashwander as a defendant and will do so again.

[3] Lux Amber has been served but has not defended the case. Counts Four, Eight, and Ten are also asserted against Lux Amber, and the Court expresses no view on those claims as against Lux Amber at this time.

# LEGAL STANDARD

## A. Standard For Dismissal Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To decide whether a complaint survives a motion to dismiss, [district courts] use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Here, Plaintiffs "bear

the burden of setting forth facts that entitle them to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## DISCUSSION

### A. Count One

Count One is a claim by Hayashi for breach of contract against Lux Amber and Layton. Hayashi claims two agreements were breached: the April 2023 $100,000 CD investment and the October 2018, personal note for $50,000 with Layton. (Doc. 39 at ¶¶ 26–28, 42–44, 77.) Layton argues that Count One, to the extent it rests on the CD investment, is due to be dismissed because (1) the CD investment was an oral agreement for a term of thirteen months and is therefore unenforceable under the Statute of Frauds, (2) he was not a party to the CD investment agreement, and (3) Hayashi has failed to allege damages arising from any breach by him. Layton makes no argument concerning the personal note.

Under Alabama law, a claim for breach of contract requires (1) a valid contract binding the parties, (2) the plaintiff's performance under the contract, (3) the defendant's nonperformance, and (4) resulting damages. *See Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). And under Alabama's version of the Statute of Frauds, a contract or an agreement that, "by its terms, is not to be performed within one year from the making thereof," is void unless the agreement, or some note or memorandum of it, is in writing and subscribed by the party to be charged. Ala. Code § 8-9-2(1). The Statute of Frauds is an affirmative defense, and therefore a complaint may be dismissed on that basis only if the defense is apparent on the face of the complaint. *See Wells v. Brown*, 58 F.4th 1347, 1356 (11th Cir. 2023).

Here, it cannot be determined from the face of the TAC that the CD investment allegation is affirmatively barred by the Statute of Frauds. Layton characterizes the CD investment as an oral agreement, but the TAC does not allege that it was oral. Instead, the TAC alleges that the CD paperwork was sent to Hayashi

through DocuSign, that the paperwork contained required signature fields, and that she was told she needed to sign quickly. The TAC thus leaves open that the agreement was reduced to a writing subscribed by the party to be charged.

Further, even if the agreement comes within the scope § 8-9-2(1), the TAC alleges that Hayashi fully performed by funding the $100,000 CD and that Defendants did not pay the promised interest or return her principal. Alabama recognizes a full-performance exception to the Statute of Frauds: "A contract is executed, and not voided by the Statute of Frauds, if the plaintiff has fully performed his obligation to the defendant and sues the defendant to obtain the defendant's performance or the completion of the defendant's performance." *Ex parte Ramsay*, 829 So. 2d 146, 155 (Ala. 2002); *see also Amanda Howard Real Est., LLC v. Lee*, 387 So. 3d 120, 128 (Ala. 2023) ("This Court has nevertheless recognized that the Statute of Frauds does not void a contract that has been fully performed by the party seeking to enforce it."). A plurality of the Alabama Supreme Court has explained that "this Court has applied the full-performance exception to contracts that fall within § 8-9-2 despite the absence of statutory language requiring it," including "contracts that, by their terms, are not to be performed within one year." *Patel v. Shah*, 295 So. 3d 659, 666 (Ala. 2019) (plurality opinion).

Nor do Layton's remaining arguments warrant dismissal. The TAC alleges that Lux Amber and Layton entered into the CD agreement with Hayashi and that Layton personally guaranteed repayment; that Layton promised Hayashi that he would pay off the line of credit securing her CD so that her principal could be returned; that Layton stated in a written "Personal Guarantee" that he personally guaranteed that line of credit; and that Layton acknowledged in writing that Lux Amber lacked the funds to repay it. Layton replies that any guarantee ran to the bank rather than to Hayashi and that he was not a party to her CD agreement. But at this stage, the Court must accept the TAC's allegation that Layton personally guaranteed

repayment of Hayashi's principal, and the TAC alleges a written guarantee, so the Statute of Frauds' separate writing requirement for a promise to answer for the debt of another, Ala. Code § 8-9-2(3), is not evident from the face of the TAC. What obligations Layton's guarantee encompasses, and whether it is enforceable against him, are questions for a developed record.[4]

Layton's damages argument rests on the same premise—that the TAC alleges no enforceable undertaking by him personally—and therefore also fails with it. The TAC alleges that Hayashi funded the CD, was not paid the promised interest, and has been unable to obtain the return of her principal at maturity. Those allegations, when assumed true and viewed favorably to Hayashi, state a plausible breach of contract claim against Layton on the CD investment.

**B. Count Two**

Count Two, like Count One, is founded on an alleged breach of a CD agreement; that is, that Lux Amber and Layton, like with Hayashi, failed to return Lazerson's $100,000 CD investment or pay interest. Layton moves to dismiss for the same reasons that he argues Count One should be dismissed as to Hayashi.

But Count Two differs in one respect. Count One alleges that the CD paperwork was sent to Hayashi through DocuSign, (doc. 39 at ¶ 43), but Count Two does not say anything about whether Lazerson's agreement was reduced to writing or sent to him through DocuSign. The TAC alleges only that, when he was solicited to invest, Lazerson "was told" about the CD investment. (*Id.* at ¶ 63.) Layton argues that Lazerson's agreement was oral and therefore is void under the Statute of Frauds

---

[4] The parties also dispute whether Alabama guaranty law, including the inapplicability of the full-performance exception to a collateral promise to answer for another's debt, bears on Layton's alleged guarantee. *See* Ala. Code § 8-9-2(3); *Parker v. Williams*, 977 So. 2d 476, 480 (Ala. 2007). Because the Court accepts all well-pleaded allegations as true at this stage, and Hayashi has stated a plausible breach of contract claim against Layton in Count One, the Court need not resolve those questions now.

because it called for a thirteen-month term. Lazerson does not allege that his agreement was in writing. But again, the Statute of Frauds is an affirmative defense that supports dismissal only when it is apparent on the face of the complaint, *see Wells*, 58 F.4th at 1356, and the TAC does not evidence that Lazerson's claim is barred.

Further, Lazerson alleges that Lux Amber and Layton entered into a valid and binding agreement under which they agreed to pay him a guaranteed 6% annual return on his $100,000 CD investment and to return his principal at maturity after thirteen-months, with Layton personally guaranteeing repayment; that he fully performed by funding the CD; and that Defendants breached the agreement by failing to pay the agreed-upon interest and by failing to return his principal. According to Lazerson, these allegations show that he fully performed, and therefore that the Statute of Frauds does not apply due to the full performance exception. *See also Amanda Howard Real Est., LLC v. Lee*, 387 So. 3d 120, 128 (Ala. 2023).

The Court agrees to the extent this count is based on the CD agreement itself. But the full-performance exception does not extend to a promise to answer for the debt of another. Section 8-9-2(3) separately voids any "special promise to answer for the debt, default or miscarriage of another" unless it is in writing and subscribed by the party to be charged, and the Alabama Supreme Court has not extended the executed-contract exception to guaranties. *See Parker*, 977 So. 2d at 480.

Lazerson's CD investment claim is also premised on Layton's alleged agreement to guarantee the CD. That agreement is not subject to the full performance exception to the Statute of Frauds. As such, the Statute of Frauds does apply if the guarantee agreement was oral.

The TAC alleges that Layton personally guaranteed Lazerson's investment, but it does not allege that the guarantee was oral. Layton contends that the allegation that Lazerson "was told" about his CD investment establishes that the guarantee was

oral. (Doc. 51 at 4–5.) But paragraph 63 describes what Lazerson was told about in terms of the CD investment. (Doc. 39 at ¶ 63.) The guarantee is also mentioned separately in paragraph 64, and the TAC says nothing about its form. Drawing reasonable inferences in Lazerson's favor, the TAC does not establish on its face that Layton's alleged guarantee was oral. The Statute of Frauds therefore does not support dismissal at this stage. *See Wells*, 58 F.4th at 1356. Whether Layton in fact gave a written guarantee, and thus whether Lazerson may recover from Layton as a guarantor, can be resolved on a developed record.

Layton's remaining arguments—that he was not a party to the CD agreement and that Lazerson alleges no damages from any breach by him—fail for the same reasons given as to Count One. The TAC alleges that Layton personally guaranteed repayment and that Lazerson funded his CD, received only a single $500 interest payment, and has not been repaid his principal or the other interest that he was due. Count Two states a plausible claim for breach of contract against Layton.

**C. Count Four and Count Six**

Counts Four and Six charge that Defendants made material misrepresentations and omissions to Lazerson that induced him to invest in Lux Amber, in violation of Section 10(b) of the Exchange Act, SEC Rule 10b-5, and Section 20(a) of the Exchange Act. Layton argues that Count Four does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA), and that Count Six fails because Count Four does not plead a primary violation.

Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated under that section, makes it

unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b), (c); *see also Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). Section 20(a) makes "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder" jointly and severally liable with the controlled person. 15 U.S.C. § 78t(a).

A claim under Section 10(b) and Rule 10b-5 must satisfy three layers of pleading requirements: (1) the notice-pleading requirements of Federal Rule of Civil Procedure 8(a)(2); (2) the heightened particularity requirements of Rule 9(b); and (3) the other requirements imposed by the PSLRA. *See Carvelli*, 934 F.3d at 1317–18; *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1295–96 (11th Cir. 2011). "Failure to meet any of the three standards will result in a complaint's dismissal." *Carvelli*, 934 F.3d at 1318.

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." In the securities fraud context, a complaint must set forth: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *Carvelli*, 934 F.3d at 1318; *FindWhat*, 658 F.3d at 1296. Put differently, under Rule 9(b) "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the

requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

The elements of a Section 10(b) claim are "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro*, 544 F.3d at 1236–37 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)). The PSLRA adds pleading requirements to those elements. A complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). And "with respect to each act or omission alleged," the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

Counts Four and Six rest on the following alleged misrepresentations and omissions to Lazerson: (1) that his CD investment was a standard, guaranteed 6% certificate of deposit, when in fact his $100,000 served as collateral for a line of credit taken out by Lux Amber and Layton; (2) that Lux Amber would file the documents necessary to become publicly traded; (3) that Lux Amber's revenue was increasing yearly, as reiterated in a September 30, 2021 Shareholder Update and a March 6, 2023 Letter to Shareholders; and (4) that an SBA loan would be obtained to ensure the return of his CD investment. (Doc. 39 at ¶¶ 63–64, 68, 96.) As to timing, the TAC alleges that Lazerson first learned of Lux Amber in or around January 2021, (*id.* at ¶ 61); that the representations in paragraph 63 of the TAC were made "[a]t the time he was solicited to invest," (*id.* at ¶ 63); and that the two shareholder communications are dated September 30, 2021, and March 6, 2023, (*id.* at ¶ 68). The

TAC does not say who made the representations in paragraph 63, when Lazerson was solicited, when he funded his CD investment, or when he made the stock purchases that account for the remaining $135,928 of his investment. Layton argues that these allegations fail to identify the speaker or date of the challenged statements, fail to show how they were false or misleading, and fail to show that Lazerson relied on them.

Lazerson responds that the TAC must be read as a whole and that, so read, it adequately identifies the transactions, the representations, and Layton's role. But Lazerson concedes much of what Layton argues. He acknowledges that paragraph 63 "does not identify a particular speaker, exact date, or medium for each initial representation"; that the TAC "does not identify the dates of Lazerson's individual stock purchases relative to the September 30, 2021 shareholder communication"; that paragraph 63 uses "the passive formulation 'Lazerson was told'" and "does not assign each representation to a particular speaker"; and that the surrounding allegations "do not necessarily establish that Layton personally made each remaining paragraph 63 statement." (Doc. 47 at 12–13.) He argues instead that these are "discrete" pleading deficiencies, curable by amendment, that do not defeat Count Four as a whole. (*Id.* at 13–15.)

Those concessions are noted, but reading the TAC as a whole does not cure the pleading deficiencies. Rule 9(b) requires a securities-fraud complaint to identify "precisely what statements or omissions were made in which documents or oral representations"; "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them"; and "the content of such statements and the manner in which they misled the plaintiff." *Galectin*, 843 F.3d at 1269. The Eleventh Circuit has affirmed dismissal where, among other deficiencies, a complaint "does not specify when the improper accounting occurred." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1263 (11th

Cir. 2006). Nothing elsewhere in the TAC supplies the missing speaker, date, or medium for the statements and omissions in paragraphs 63 and 64.

Lazerson alleges that, "[a]t the time he was solicited to invest," he "was told, in substance" that his CD would pay a guaranteed 6% return, that Lux Amber would file the documents necessary to become publicly traded, that its revenue was increasing yearly, and that an SBA loan would be obtained. (Doc. 39 at ¶ 63.) The TAC does not say who told him, when, or by what means. The only temporal markers are that Lazerson first learned of Lux Amber in or around January 2021, and that the TAC's heading for this section refers to his "2021" CD investment and stock purchases. Those allegations do not identify "the time and place of each such statement and the person responsible for making" it. *Galectin*, 843 F.3d at 1269.

Nor do the TAC's general allegations that Defendants made misleading statements "[f]rom no later than 2016 through the present," (doc. 39 at ¶ 2), or that Layton made representations to investors "[b]eginning in or around June 2020," (*id.* at ¶ 13), fill the gap. Those allegations are too general to identify any one statement made to Lazerson, who alleges that he first learned of Lux Amber in 2021.

The omission theory—that Lazerson was not told that his CD funds would serve as collateral for a line of credit—fares no better. The TAC does not identify who failed to disclose that fact, when, or in what communication. It alleges that Layton personally guaranteed Lazerson's investment, and that Layton later told Lazerson that his money would default to ServisFirst Bank to satisfy Lux Amber's line of credit if he did not continue with the CD, but it does not say when either communication occurred. Without those particulars, the TAC does not alert Layton to the "precise misconduct with which [he is] charged." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted).

The September 30, 2021, Shareholder Update stands on firmer footing as to the "who, what, when." The TAC identifies the document, its date, and its author,

and it describes the update's contents: a 45% increase in revenue, higher gross margins, lower operating expenses, and expectations of steady growth. (Doc. 39 at ¶¶ 38, 68.) But the TAC does not plead with particularity how the update misled Lazerson.

First, it does not allege facts showing that the update's statements were false or misleading when made, as the PSLRA requires. *See* 15 U.S.C. § 78u-4(b)(1); *Carvelli*, 934 F.3d at 1318. The TAC asserts that the update "lacked a reasonable basis" and omitted that Lux Amber's SEC filings were not current and that no legitimate trading market for its shares existed, (doc. 39 at ¶ 38; *see also id.* at ¶ 68), but it alleges no facts showing that the reported revenue, margin, and expense figures were inaccurate, or explains how the omitted facts rendered those figures misleading. Plaintiffs themselves "do not contend that Lux Amber's later financial distress retroactively rendered every historical figure false." (Doc. 47 at 14.) And the August 27, 2024, memorandum that Lazerson relies on, which stated that Lux Amber "has no income," was issued nearly three years after the update and does not allege that Lux Amber lacked income in 2021. (Doc. 39 at ¶¶ 71, 73.) Plaintiffs' response advances a half-truth theory premised on an August 20, 2021, email, received by Layton, reporting that Fidelity could not accept Lux Amber shares for transfer because the Form 10-K had not been filed. (Doc. 47 at 14–15; Doc. 39 at ¶ 36.) Even assuming that theory is fairly pleaded in the TAC, it does not cure the second problem.

Second, and independently, the TAC does not allege when Lazerson made his stock purchases or funded his CD relative to the update, so the Court cannot determine whether he could have relied on it in making any purchase. Plaintiffs acknowledge as much: "the September 30 communication can support purchase reliance only to the extent Lazerson made a qualifying purchase thereafter." (Doc.

47 at 15.) Without allegations of when Lazerson purchased, the TAC does not plead "the manner in which [it] misled the plaintiff." *Galectin*, 843 F.3d at 1269.

The March 6, 2023, Letter to Shareholders, which stated that "2023 will be more revenue than 2022" and that 2024 "will improve with more customers," cannot support Lazerson's claim for a different reason. (Doc. 39 at ¶ 68.) The TAC places Lazerson's CD investment and stock purchases in 2021. (*Id.* at 15.) Plaintiffs concede that the letter's timing "limits the communication's ability to establish reliance on an earlier stock purchase" and that they "need not contend that the March 2023 communication induced a stock purchase completed in 2021." (Doc. 47 at 25–26.) A private plaintiff under Section 10(b) must allege a misrepresentation connected to and relied upon in his purchase or sale of a security, and a statement made after Lazerson parted with his money cannot have induced his purchases. To the extent Lazerson contends that he held his investments, declined to surrender his CD, or refrained from pursuing remedies in reliance on later statements, those theories describe decisions to hold rather than to purchase or sell, which are not actionable under Section 10(b). *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975) (holding that a private damages action under Rule 10b-5 is confined to actual purchasers or sellers of securities).

Because the TAC does not identify the speaker, date, or medium of the representations that allegedly induced Lazerson to invest; does not plead with particularity why the one dated communication that could have preceded his purchases was misleading; and does not allege when Lazerson purchased in relation to any identified statement, Count Four fails to satisfy Rule 9(b) and the PSLRA. Count Four is therefore due to be dismissed as to Layton.[5]

---

[5] Because Count Four fails on these grounds, the Court does not reach Layton's argument that the TAC fails to plead scienter with the particularity the PSLRA requires. Layton does not challenge loss causation, and the Court expresses no view on that element.

Count Six–Lazerson's Section 20(a) claim against Layton–rests on the same alleged conduct as Count Four, but also alleges that Lux Amber committed the primary violation. A Section 20(a) claim requires, among other things, a primary violation of the securities laws by the controlled person. *Mizzaro*, 544 F.3d at 1237; *see also Rosenberg v. Gould*, 554 F.3d 962, 966–67 (11th Cir. 2009). Layton's challenge to Count Six is derivative of his challenge to Count Four, as Plaintiffs recognize, and Plaintiffs identify no basis for Count Six to survive if Count Four does not. Because Count Four does not plead a primary violation of Section 10(b) and Rule 10b-5, Count Six fails as well and is due to be dismissed.

**D. Count Eight**

Count Eight is a claim under the Alabama Securities Act, Ala. Code § 8-6-17. It alleges that Defendants made the false statements of material fact and omissions described in Section VI of the TAC in connection with the offer, sale, and purchase of Lux Amber securities and the CD investment. Layton moves to dismiss on the ground that Count Eight suffers from the same defects as Count Four.[6] Lazerson responds that the Alabama Securities Act does not incorporate every requirement governing a private Section 10(b) claim, but he states that Plaintiffs "rely on the analysis of Count IV to the extent the claims share questions concerning the particularity or misleading character of the challenged representations." (Doc. 47 at 21–23.)

Section 8-6-17(a) of the Alabama Securities Act makes it unlawful for any person, in connection with the offer, sale, or purchase of any security, to employ any device, scheme, or artifice to defraud; to make any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light

[6] Layton's brief cites Ala. Code § 8-6-12(a) in describing Count Eight, (doc. 45 at 17), but Count Eight is brought under § 8-6-17, and Layton develops no argument under § 8-6-12, which addresses the Act's territorial reach. The Court does not address that issue.

of the circumstances under which they are made, not misleading; or to engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person. Because § 8-6-17 and Rule 10b-5 are virtually identical, "federal cases should be reviewed to aid in the proper interpretation of the corresponding sections of Alabama statutory law inasmuch as the sections are virtually identical." *Buffo v. State*, 415 So. 2d 1158, 1161–62 (Ala. 1982); *accord Altrust Fin. Servs., Inc. v. Adams*, 76 So. 3d 228, 236 n.4 (Ala. 2011); *see also Buffo v. Graddick*, 742 F.2d 592, 595 (11th Cir. 1984).

Alabama securities law is still not coextensive with federal securities law, and the Court agrees with Lazerson that Count Eight need not satisfy every requirement of a private Section 10(b) claim. The Act's civil remedy is available only to purchasers of securities, *see White v. Sanders*, 650 F.2d 627, 629 (5th Cir. 1981) (explaining that the Alabama statute "allows recovery by purchasers only"), and § 8-6-19(a)(2) "allows recovery for mere negligence in connection with the sale of a security," *id.* at 630. The PSLRA's strong-inference requirement for scienter and the federal element of loss causation therefore do not necessarily govern Count Eight, and Layton, whose only argument is that Count Eight suffers from the "same defects" as Count Four, (doc. 45 at 17; doc. 51 at 12), does not argue otherwise.

But those differences do not save Count Eight because the defect that doomed Count Four—a lack of particularity—is independent of scienter and loss causation. Count Eight sounds in fraud. It alleges that the statements and omissions described in Section VI were made "with the intent to deceive, manipulate, or defraud, or with severe recklessness as to their truth." (Doc. 39 at ¶ 121.) Because Lazerson filed this lawsuit in federal court, Rule 9(b)'s specificity requirements apply to such a claim. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025); Fed. R. Civ. P. 9(b). Lazerson acknowledges that Count Eight shares with Count Four questions concerning "the particularity or misleading character of the

challenged representations." (Doc. 47 at 23.) Count Eight rests on the same alleged statements and omissions as Count Four, and, for the reasons already explained, the TAC does not identify the speaker, date, or medium of the paragraph 63 statements or the collateralization omission, does not plead with particularity why the September 30, 2021, update was misleading, and does not allege when Lazerson purchased relative to any identified statement. Count Eight therefore fails Rule 9(b) to the same extent as Count Four and is due to be dismissed as to Layton.

**E. Count Ten**

Count Ten is a state-law claim for fraudulent misrepresentation and omission. Lazerson alleges that Defendants owed him a duty not to misrepresent or omit material facts relating to these investments and Lux Amber; that they breached that duty by misrepresenting and omitting material facts about "the nature, safety, SEC status, and tradability of the Lux Amber shares and the true, collateralized nature of the CD investment"; that he reasonably relied on those misrepresentations and omissions; and that he was harmed as a result. (Doc. 39 at ¶¶ 129–31.) Layton argues that Count Ten does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and should therefore be dismissed. Lazerson concedes that Rule 9(b) governs this claim, but argues that he has adequately alleged a claim for fraudulent misrepresentation and suppression[7] and that statements made after his investments remain relevant to his decision to not withdraw his CD early. (*Id.* at 23–26.)

Fraud-based claims, including claims for misrepresentation, omission, and suppression, are subject to Rule 9(b) when brought in federal court. *See Otto Candies*, 137 F.4th at 1178 ("Because the plaintiffs filed this lawsuit in federal court,

[7] Lazerson labels his claim as fraudulent omission in the TAC but then refers to it as fraudulent suppression in his response. Under Alabama law, there is no substantive difference between a claim of fraudulent omission and a claim of fraudulent suppression. *See Hurry v. Gen. Motors LLC,* 622 F. Supp. 3d 1132, 1152 (M.D. Ala. 2022).

Rule 9(b)'s specificity requirements apply."). Count Ten rests on the same alleged misrepresentations and omissions as Count Four: the statements described in paragraph 63, the undisclosed collateralization of the CD, and the shareholder communications of September 30, 2021, and March 6, 2023. (Doc. 39 at ¶¶ 63–64, 68, 128–30.) Plaintiffs acknowledge that Layton's Rule 9(b) challenge to Count Ten "substantially duplicates his challenge to Count IV," and they rely on their earlier arguments. (Doc. 47 at 24.) Thus, for the same reasons that the allegations in Count Four do not meet the pleading requirements imposed by Rule 9(b), the misrepresentation theory in Count Ten does not either.

Count Ten's omission and suppression theories fail for the same reason. Lazerson's principal omission theory is that he was not told that his $100,000 would serve as collateral for a line of credit. As already discussed, the TAC does not identify who failed to disclose that fact, when, or in what communication. *See Galectin*, 843 F.3d at 1269 (requiring "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them"). To the extent Lazerson contends that the shareholder communications omitted Lux Amber's SEC reporting delinquency and its inability to meet its financial obligations, that theory fails for the reasons discussed as to Count Four: the TAC does not allege when Lazerson made his purchases relative to those communications, and Plaintiffs concede that the March 2023 letter post-dates them.

Lazerson responds that Alabama recognizes reliance by forbearance and that representations or omissions made after his investments may support a fraud claim if they induced him to refrain from early withdrawing his CD, demanding repayment, or pursuing another remedy. The only allegations offered in support are that, when Lazerson asked to withdraw his CD investment, he was told that his money would default to ServisFirst Bank to satisfy Lux Amber's outstanding line of credit, and that Layton and Lux Amber pressured him to transfer his funds to

Industrial Chem Solutions, Inc. But the TAC does not say who made these statements or when, does not allege that the statement concerning ServisFirst was false, and does not explain how Lazerson was misled. Rule 9(b) requires more. And the forbearance theory does not rescue the other alleged misrepresentations because the TAC identifies no particular statement, made at a particular time, on which Lazerson relied in deciding to forgo withdrawal or other remedies. Accordingly, Count Ten is due to be dismissed as to Layton.

**F. Plaintiffs' Request To File A Fourth Amended Complaint**

In their response, Plaintiffs ask that any dismissal be limited to the deficient claims or theories, be without prejudice, and be accompanied by leave to amend. Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave when justice so requires," but leave may be denied for reasons such as "repeated failure to cure deficiencies by amendments previously allowed" or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg*, 554 F.3d at 967; *see also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

Plaintiffs have not filed a formal motion for leave to amend or tendered a proposed Fourth Amended Complaint. And Layton responds that Plaintiffs have already been afforded two opportunities to cure their pleading deficiencies and have not done so.

The Court agrees that further leave is not warranted at this time. The Eleventh Circuit has explained that it has "never required district courts to grant counseled

plaintiffs more than one opportunity to amend a deficient complaint." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (per curiam). The TAC is Plaintiffs' third amended pleading, filed after the Court previously granted a motion to dismiss Plaintiffs' initial complaint due to pleading deficiencies. Plaintiffs' imbedded request for leave to amend is therefore denied.

## CONCLUSION

In accordance with the foregoing, it is **ORDERED** as follows:

1. Defendant Walton Ashwander is **DISMISSED** from the case without prejudice;

2. Defendant Earl Thomas Layton's *Motion for Partial Dismissal* (doc. 45) is **GRANTED IN PART** as to Counts Four, Six, Eight, and Ten of the Third Amended Complaint, and therefore those claims are **DISMISSED WITH PREJUDICE** as to Earl Thomas Layton for failure to state a claim;

3. Defendant Earl Thomas Layton's *Motion for Partial Dismissal* (doc. 45) is **DENIED IN PART** to the extent it seeks dismissal of Count One and Count Two of the Third Amended Complaint;

4. Plaintiffs' imbedded request for leave to file a Fourth Amended Complaint is **DENIED**;

5. Plaintiff Stephanie Hayashi's claims in Counts One, Three, Five, Seven, and Nine and Plaintiff Jarold Lazerson's claim advanced in Count Two shall proceed; and

6. All claims against Defendant Lux Amber Corporation shall proceed.

DONE on this the 23d day of November 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE